**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ROBERT HARTH, | : | CIVIL ACTION NO. 09-5332 (MLC) |
| Plaintiff, | : | **MEMORANDUM OPINION** |
| v. | : | |
| DALER-ROWNEY USA LIMITED, | : | |
| Defendant. | : | |

**COOPER, District Judge**

Plaintiff, Robert Harth, commenced this action in state court against Defendant, Daler-Rowney USA Limited ("Daler-Rowney"), alleging wrongful termination on the basis of age discrimination, in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-1 et seq. (Dkt. entry no. 1, Rmv. Not., Ex. A, Compl.) Defendant removed the action to federal court on the basis of jurisdiction pursuant to 28 U.S.C. § 1332. (See dkt. entry no. 14, Order Denying Mot. to Remand.) Defendant now moves for summary judgment in its favor pursuant to Federal Rule of Civil Procedure ("Rule") 56. (Dkt. entry no. 32.) Plaintiff opposes the motion. (Dkt. entry no. 37, Pl. Opp'n.)

The Court decides the motion on the papers without oral argument, pursuant to Local Civil Rule 78.1(b). The Court, for the reasons stated herein, will grant Defendant's motion for summary judgment.

## BACKGROUND

Defendant is a United Kingdom incorporated private limited company engaged in the manufacture and sale of artists' brushes, colors, and related supplies. (Dkt. entry no. 43, Def. Combined Stmt. Facts at ¶ 3.)  Plaintiff worked at Defendant's United States distribution center in Cranbury, New Jersey.  (Id. at ¶ 6; Order Denying Mot. to Remand at 1-2.)  Plaintiff was employed by Defendant in the position of Controller from October 1, 1997, to October 9, 2008.  (Def. Combined Stmt. Facts at ¶ 1.)  At the time of his termination, Plaintiff was sixty-three years old. (Id. at ¶ 2.)  The reason given for Plaintiff's termination was stated in a letter from Defendant's Financial Director, Andrew Craig ("Craig"), to Plaintiff, dated October 9, 2008, informing Plaintiff that Plaintiff's "position as Controller at Daler-Rowney in the USA has been eliminated so that the Company may (1.) cope with unfavorable global economic conditions and (2.) efficiently use the staff at [its] main facility in the UK to perform the duties of [Plaintiff's] currently-redundant position," effective immediately.  (Dkt. entry no. 32, Bayne Cert., Ex. A, 10-9-08 Termination Letter.)

Defendant contends that Plaintiff's employment was terminated due to dire financial conditions facing the company, which caused it to pursue significant restructuring and cost reductions.  (See dkt. entry no. 32, Def. Br. at 6-8.)  Plaintiff

2

contends that he can show that he was (1) in a protected age
category, (2) qualified for the position he held as Controller,
and (3) replaced by a lesser-qualified individual who was 31
years old, specifically, Jenni Rossi ("Rossi"), who was hired by
Defendant as a Senior Accountant in 2007.  (Pl. Opp'n at 8.)

**DISCUSSION**

**I.   Summary Judgment Standard**

The standard for a motion for summary judgment is well-
settled and will be briefly summarized here.  Rule 56 provides
that summary judgment is proper if there is no genuine dispute as
to any material fact and the movant is entitled to judgment as a
matter of law.  Fed.R.Civ.P. 56(a).  In making this
determination, the Court must "view[] the record in the light
most favorable to the non-moving party and draw[] all inferences
in that party's favor."  United States ex rel. Josenske v.
Carlisle HMA, Inc., 554 F.3d 88, 94 (3d Cir. 2009) (citing
Abramson v. William Patterson Coll., 260 F.3d 265, 276 (3d Cir.
2001)).

**II.  NJLAD Age Discrimination Standard**

The NJLAD prohibits employers from, inter alia, discharging
an individual from employment because of the individual's age.
N.J.S.A. § 10:5-12(a); see also N.J.S.A. § 10:5-4 (recognizing
opportunity to obtain employment "without discrimination because
of . . . age," as a civil right); Fuchilla v. Layman, 109 N.J.

3

319, 332 (1988).  To prevail on a claim under the NJLAD for age discrimination, a plaintiff must "show that the prohibited consideration[, age,] played a role in the decision making process and that it had a determinative influence on the outcome of that process."  Bergen Commercial Bank v. Sisler, 157 N.J. 188, 207 (1999) (internal quotations omitted).  The discrimination must be intentional, and may be proven by either direct or circumstantial evidence.  Id. at 208.

**A.   Direct Evidence**

A plaintiff attempting to prove such discrimination by direct evidence will survive a motion for summary judgment by producing evidence "which if believed, proves [the] existence of a fact in issue without inference or presumption."  Id.  In the context of a wrongful discharge claim, a plaintiff must show "direct evidence that decisionmakers placed substantial negative reliance on an illegitimate criterion," such as age, in deciding whether to terminate the plaintiff's employment.  Id.  If a plaintiff makes this showing, the burden shifts to the employer to show that it would have made the same decision even in the absence of the impermissible criterion.  Id.; see also Arenas v. L'Oreal USA Prods., Inc., 790 F.Supp.2d 230, 235 (D.N.J. 2011).

The Supreme Court of the United States has held that in the context of a claim for violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., a plaintiff

4

must prove "by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action," such that the burden of persuasion "does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 129 S.Ct. 2343, 2352 (2009). Gross marked a departure from the "mixed-motive" burden-shifting analysis of Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), which was a Title VII case, by declining to apply it in the ADEA context, noting that the Price Waterhouse "burden-shifting framework is difficult to apply" and therefore abandoning the scheme wherein if a plaintiff can demonstrate that age is a "motivating factor" for the employment decision, the burden shifts to the employer to show that it would have made the decision regardless of the plaintiff's age. Gross, 129 S.Ct. at 2352, overruling Price Waterhouse, 490 U.S. at 261 (O'Connor, J., concurring); see Smith v. City of Allentown, 589 F.3d 684, 690-91 (3d Cir. 2009) (noting that "Gross refused to apply Price Waterhouse['s]" mixed-motive doctrine "to ADEA claims" and "generally . . . expressed ambivalence about the utility of burden-shifting in age discrimination claims"). Defendant urges that the Gross "but-for" causation requirement applies to Plaintiff's NJLAD claim. (See Def. Br. at 14.)

5

The Court cannot find that Gross applies here, insofar as Plaintiff asserts a cause of action under the NJLAD only and asserts no federal cause of action under the ADEA.  See Geltzer v. Virtua W. Jersey Health Sys., 804 F.Supp.2d 241, 250 (D.N.J. 2011) (observing that "the New Jersey Supreme Court has not yet addressed whether Gross's holding will apply to direct evidence age discrimination claims under the LAD," such that "Sisler, which adopts the Price Waterhouse analytical framework, controls"); cf. Reich v. Schering-Plough Corp., 399 Fed.Appx. 762, 764 (3d Cir. 2010) (applying "but-for" standard to age discrimination claims brought under the ADEA and NJLAD).  Thus, the Court will follow Geltzer and apply the standard as stated in Sisler, rather than the Gross standard Defendant seeks to apply in this action.  We do, however, observe Sisler's guidance that "stray remarks in the workplace, unrelated to the decisional process, [are] not sufficiently direct evidence of discrimination to justify requiring an employer to prove that its . . . decisions were based on legitimate criteria."  Geltzer, 804 F.Supp.2d at 250 (citing Sisler, 157 N.J. at 208).

**B.   Circumstantial Evidence**

A plaintiff who is unable to make out a claim for wrongful termination on the basis of age discrimination using direct evidence may instead rely on circumstantial evidence, under the familiar burden-shifting methodology described in McDonnell

6

Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Sisler, 157
N.J. at 209-10 (applying McDonnell Douglas to claim for age
discrimination under the NJLAD and observing that the New Jersey
Supreme Court "has adopted the McDonnell Douglas approach 'as a
starting point' in analyzing claims under the [NJ]LAD"); cf.
Smith, 589 F.3d at 691 (holding that the court would "not depart
from [its] prior decisions applying McDonnell Douglas to age
discriminations unless those decisions are irreconcilable with
Gross" and concluding that "the but-for causation standard
required by Gross does not conflict with . . . continued
application of the McDonnell Douglas paradigm in age
discrimination cases").

     McDonnell Douglas employs three stages of analysis.  First,
the plaintiff must make out a prima facie case of discrimination;
if the plaintiff does so, it gives rise to a presumption of
discrimination, which the defendant may rebut in the second step
by producing admissible evidence of a legitimate, non-
discriminatory reason for the adverse employment action.
McDonnell Douglas, 411 U.S. at 802; Tex. Dep't of Cmty. Affairs
v. Burdine, 450 U.S. 248, 253 (1981).  Where the employer
satisfies the second step, the presumption of discrimination
disappears, and the burden of production shifts back to the
employee in the third stage to prove "by a preponderance of the
evidence that the legitimate nondiscriminatory reason articulated

by the defendant was not the true reason for the employment decision but was merely a pretext for discrimination." Sisler, 157 N.J. at 211 (citing Andersen v. Exxon Co., 89 N.J. 483, 493 (1982)).

A plaintiff may establish a prima facie case for wrongful termination on the basis of age discrimination by showing that (1) he belongs to a protected class, (2) he was qualified for the position held, (3) he was terminated despite adequate qualifications, and (4) there exists a logical basis on which to find that the employer's decision to terminate him was affected significantly by his age. Arenas, 790 F.Supp.2d at 236. The fourth element differs somewhat from the analogous federal context, which requires that the plaintiff show that he was replaced by someone who was not a member of the protected class or "someone significantly younger to support an inference of discriminatory animus." See Smith, 589 F.3d at 689.

The NJLAD differs from the ADEA in that it specifies no qualifying age for age discrimination; thus, under New Jersey law, a plaintiff need not demonstrate that he was replaced with someone from outside the protected class, but only that "the employer sought others to perform the same work that the plaintiff did after the plaintiff was removed from his position." See Wright v. L-3 Commc'ns Corp., 227 F.Supp.2d 293, 298-301 (D.N.J. 2002); see also Arenas, 790 F.Supp.2d at 236-37

8

(discussing New Jersey Appellate Division cases interpreting <u>Sisler</u> to hold that, "in establishing the fourth element of a prima facie case age discrimination under the NJLAD, the focal question is not necessarily how old [or] young the claimant or [his] replacement was, but rather whether the claimant's age, in any significant way, made a difference in the treatment [he] was accorded by [his] employer" (internal quotations and citations omitted)).  <u>But see</u> <u>Monaco v. Am. Gen. Assur. Co.</u>, 359 F.3d 296, 301-04 (3d Cir. 2004) (expressing satisfaction that the same standard for the fourth prima facie element for a claim under the NJLAD should apply as if the case had been brought under the ADEA).[1]

## III. Analysis of Plaintiff's Claims

### A.   Direct Evidence

Defendant contends that even under a mixed-motives analysis, Plaintiff cannot "present corroborating evidence that either the decision-maker, UK Financial Director Andrew Craig, or any other member of UK executive management was motivated at all by an age-bias" and "lacks . . . evidence of age-based motives."  (Dkt. entry no. 42, Def. Reply Br. at 5.)  Specifically, Defendant

---

[1] <u>Arenas</u> found the <u>Monaco</u> court's interpretation of New Jersey state law with respect to the fourth element of a prima facie case in the context of age discrimination, insofar as it found the NJLAD to require a plaintiff to show that he or she was replaced by a sufficiently younger person, to be dicta.  790 F.Supp.2d at 236.

contends that "Plaintiff's <u>only</u> reference to age in his entire record is a single phrase heard by former US operations president Robert Brown ten months before plaintiff's termination."  (<u>Id.</u>; <u>see</u> Pl. Opp'n at 36-43.)

The Court notes that Defendant, in its statement of facts, asserts that:  (1) the discovery record in this action does not include any reference, by any person, to Plaintiff's age; (2) no witness testimony taken in this action, including that of Plaintiff, states that any person held an age-discriminatory animus against Plaintiff; and (3) no documents in the discovery record reflect an age-discriminatory animus against Plaintiff.  (Def. Combined Stmt. Facts at ¶¶ 28-30.)  Plaintiff responds to these assertions with a general denial and a broad reference to Plaintiff's Counterstatement of Facts at ¶¶ 10-68.  (<u>Id.</u>)  This response is so vague and nonconforming to Local Civil Rule 56.1(a) that it may be deemed an admission.  Moreover, paragraphs 10 through 68 contain only one reference relating to age, that identified by Defendant in its reply brief.  Plaintiff's Counterstatement of Facts states that at a December 2007 meeting in the United Kingdom, CEO Patrick Giraud "openly stated to everyone present that the company needed to get 'younger and cheaper'" and that Defendant's former President Robert Brown recalled Giraud using that expression on several occasions when discussing the future of the company.  (Dkt. entry no. 44,

Combined Supp'l Stmt. Facts at ¶¶ 23-24; <u>see also</u> dkt. entry no. 37-1, Brown Aff. at ¶ 11.)  Plaintiff also points to testimony of Andrew Daler stating that Daler heard Giraud use the phrase "younger and cheaper" on one occasion in early 2006 in discussing the financial situation of the company, but never again. (Combined Supp'l Stmt. Facts at ¶ 31.)

This lone phrase, apparently uttered ten months before Plaintiff's termination and not in reference to Plaintiff specifically, is the type of stray remark that will not support a direct evidence theory of age discrimination.  <u>Price Waterhouse</u>, 490 U.S. at 277 (O'Connor, J., concurring) (noting that stray remarks in the workplace, unrelated to the decisional process, are not sufficiently direct evidence of discrimination that would justify shifting the burden to the employer to prove that its employment decisions were based on legitimate criteria).  The temporal attenuation refutes any inference that Giraud's "younger and cheaper" remark was in any way related to the decisional process involved in terminating Plaintiff.  Furthermore, Brown himself testified that he understood this phrase solely referred to Giraud's motivation to save money.  (Dkt. entry no. 33, Bayne Supp'l Cert., Ex. C, Brown Dep. at 139:9-19; Brown Dep. at 158:1-10.)  Brown testified that he was not aware of any instance where employees were singled out because of their age for termination. (<u>Id.</u>, Brown Dep. at 158:14-24.)

Giraud testified about the December 2007 meeting recalled by
Brown, stating that the purpose of the meeting was "to prepare
for the situation for next year with the threat of losing [a
major client, 'ABC Corporation']" but averring that he "surely
never [said] the company needed to get younger and cheaper,"
though he could have said, "as always that the company need[ed]
to be more proactive, more efficient."  (Bayne Supp'l Cert., Ex.
F, Giraud Dep. at 33:19-23, 34:24-35:25; see also id. at 72:5-12
(stating that "younger and cheaper" "is not my wording. . . [,
which] is permanently around efficiency"); accord Brown Aff. at ¶
10 ("The purpose of the meeting was to discuss the 2008 outlook
for Daler-Rowney.").)  Giraud also testified that the December
2007 meeting did not include any discussion specifically of
either Plaintiff or Rossi.  (Giraud Dep. at 39:17-40:13.)
Finally, the Court notes that Giraud's deposition testimony
expressly disclaimed that the decision to terminate Plaintiff was
his, and in fact stated that he did not know the reason for
Plaintiff's termination; rather, Craig made the decision.
(Giraud Dep. at 68:14-69:2.)

The Court finds that the phrase "younger and cheaper" as
recalled by Brown to have been said by Giraud ten months before
Plaintiff's termination does not constitute direct evidence of
age discrimination against Plaintiff.  The only other possible
direct evidence of a discriminatory animus is a handwritten note

12

by Brown, taken during a phone conversation with Giraud prior to
the December 2007 meeting, stating "get rid of Bob H" in favor of
someone with "Spanish skills," to be paid $60,000.  (Brown Aff.
at ¶ 12 & Attach. 1, Brown Note; Pl. Opp'n at 37.)  However, the
Brown Note says nothing at all about age in general or
Plaintiff's age in particular, and thus does not constitute
direct evidence of age discrimination.  See Sisler, 157 N.J. at
208 (discussing Castle v. Sangamo Weston, Inc., 837 F.2d 1550,
1558 n.13 (11th Cir. 1988) (giving as example of direct evidence
"a scrap of paper saying 'Fire Rollins-she is too old'")).

Plaintiff simply has not made a showing that "age, per se,
was a substantial factor in an adverse employment decision."
Sisler, 157 N.J. at 209.  Therefore, the Court will conduct a
McDonnell Douglas analysis to determine whether Plaintiff's NJLAD
claim may proceed on a circumstantial evidence theory.  Sarnowski
v. Air Brooke Limousine, Inc., 510 F.3d 398, 403 (3d Cir. 2007).

    **B.**   **Circumstantial Evidence**

        **1.**   **Plaintiff's Prima Facie Case**

Two of the four elements of Plaintiff's prima facie case are
not at issue here.  The parties do not dispute that Plaintiff,
who was sixty-three years old at the time of his termination, is
a member of a protected class for purposes of his age
discrimination claim.  See Monaco, 359 F.3d at 300 (stating that
NJLAD, unlike ADEA, does not limit its protections to persons at

13

least 40 years of age, but protects all persons whose age plays a role in the employer's decisionmaking process); cf. Sisler, 157 N.J. at 214-15, 217 (permitting age discrimination claim based on plaintiff's youth but noting that "older workers form the presumptive protected class under the anti-age-discrimination provisions of the [NJ]LAD"). Nor do the parties dispute that Plaintiff's employment was terminated on October 9, 2008. (Def. Combined Stmt. Facts at ¶ 1.) Thus, the Court focuses its inquiry on whether Plaintiff was qualified for the position of Controller, and whether there exists a logical basis to find that the decision to terminate Plaintiff was affected significantly by his age.

### a.   Qualified for Position Held

Defendant argues that Plaintiff, by his own admissions, was not meeting his employer's expectations in performing his duties as Controller. (Def. Br. at 15.) Specifically, Defendant points to evidence that: (1) Plaintiff was terminated in 2001 for poor performance, though reinstated, and (2) Plaintiff was instructed on numerous occasions to get more involved with the business, but failed to do so. (See id. at 15-16.) Craig's deposition testimony makes reference to, "on many occasions" (estimated at 20-50 times pre-termination) counseling Plaintiff that Plaintiff "needed to get closer to the business . . . understand his figures [and] work with the other members of the management

14

team," or in other words, "be more proactive."  (Bayne Supp'l
Cert., Ex. B, Craig Dep. at 37:3-39:12.)

   Defendant has not shown that summary judgment should be
granted in its favor on the basis of Plaintiff's inability to
prove this element of his prima facie case.  The Court must view
the facts in the light most favorable to Plaintiff.  Craig
testified unambiguously that Plaintiff's job performance was not
a reason for his termination, and that the only two reasons for
the termination were those stated in the termination letter:  the
global financial crisis, and the moving of his job
responsibilities back to the U.K.  (Craig Dep. at 61:7-25.)
Moreover, there is no dispute that Plaintiff was performing the
functions of Controller at the time of his termination, which the
New Jersey Supreme Court has held will suffice for the second
prong of a claim for discrimination under the NJLAD, without the
quality of the plaintiff's performance coming into play.  Zive v.
Stanley Roberts, Inc., 182 N.J. 436, 455-56 (2005).  The issue of
whether a plaintiff's performance was actually meeting the
employer's legitimate expectations is reserved for the second and
third stages of the McDonnell Douglas analysis.  Id. at 455-457.

### b.  Logical Basis for Inferring Decision to Terminate was Impermissibly Affected by Considerations of Age

   The parties both focus on the apparent factual dispute of
whether Rossi "replaced" Plaintiff.  (Def. Br. at 16-18; Pl.

Opp'n at 52.)   However, as discussed supra at Part II.B,
Plaintiff need not prove specifically that Rossi "replaced" him
in order to assert a claim that his termination was motivated by
age discrimination, as long as he is able to point to some
evidence that would permit a factfinder to logically infer that
such ageist motivations were present.   Arenas, 790 F.Supp.2d at
236. Thus, evidence relating to Rossi's employment is relevant,
but the question of whether she literally "replaced" Plaintiff as
Controller or otherwise is not dispositive.

While the "younger and cheaper" statements did not
constitute direct evidence of discrimination, we find that
viewing the facts in the light most favorable to Plaintiff, they
will suffice for purposes of the fourth element of Plaintiff's
prima facie case.   See, e.g., Reich v. Schering Corp., No. 07-
1508, 2009 WL 3230361, at *12 (D.N.J. Sept. 30, 2009), aff'd sub
nom Reich v. Schering-Plough Corp., 399 Fed.Appx. 762 (3d Cir.
2010) (finding statement "we have too many senior scientists"
sufficient to permit the inference of discrimination on the basis
of age).   Plaintiff has pointed to evidence that high-level
decisionmakers of Defendant, specifically Giraud, were focused on
hiring "younger and cheaper" employees as a cost-saving measure,
and that a younger employee was in fact hired and took over at
least some of his job functions, though not all of them.   The
context of the "younger and cheaper" statements involves

16

Defendant's proffered reason for Plaintiff's discharge, poor
economic conditions.  Thus, the Court will turn to Defendant's
proffered legitimate, nondiscriminatory reason for Plaintiff's
termination.

>        **2.   Legitimate, Nondiscriminatory Reason Proffered by
>              Defendant**

        Defendant's proffered legitimate, nondiscriminatory reason
for Plaintiff's termination is that which was stated in
Plaintiff's termination letter:  the Controller position was
being eliminated so that Defendant could "cope with unfavorable
global economic conditions" and "efficiently use the staff at
[its] UK facility to perform the duties of [Plaintiff's]
currently-redundant position."  (Def. Combined Stmt. Facts at ¶
22; see 10-9-08 Termination Letter.)  Plaintiff testified at his
deposition that he was "shocked" to learn he was being
terminated, because he had been "told that it was Jenny Rossi
that was leaving" by Craig.  (Bayne Cert., Ex. B, Pl. Dep. at
118:11-17.)

        The record contains undisputed evidence that Defendant was
experiencing financial problems in the time preceding Plaintiff's
termination.  Craig testified that the "global economic downturn"
affected Defendant such that it "was severely financial[ly]
distressed."  (Bayne Cert., Ex. D, Craig Dep. at 7:25-8:3.)  From
2000 to 2006, the group of businesses of which Defendant is a
part "lost in excess of five million pounds."  (Craig Dep. at

                                17

8:2-23.)  Defendant itself showed an operating profit of "just below 500,000" pounds sterling in 2007, and an operating profit of about 280,000 pounds sterling in 2008.  (Craig Dep. at 11:12-12:3.)  Plaintiff acknowledged at his deposition that Defendant had been in "a downward trend" for "the last five years at least."  (Pl. Dep. at 117:25-118:4.)

Defendant's financial problems became grave during 2008, when Defendant became aware that it was on the verge of losing a major account with "ABC Corporation."  (See Def. Combined Stmt. Facts at ¶¶ 11-13; Craig Dep. at 85:16-86:15.)  ABC Corporation was Defendant's "largest single customer, carrying" a significant percentage "of gross US sales."  (Def. Combined Stmt. Facts at ¶ 11.)  Defendant's management determined, and Plaintiff does not dispute, that the company "would not be able to survive" the loss of doing business with ABC Corporation, "without significant restructuring and cost reductions."  (Id. at ¶ 14.)  The parties are also not in dispute that losing the ABC Corporation account would have "devastating" consequences to Defendant.  (Id. at ¶ 15; Pl. Dep. at 110:8-10, 111:22-112:3.)  To the extent Plaintiff contends that the only evidence of the threat of Defendant's loss of the business of ABC Corporation is "blatant hearsay," the Court agrees with Defendant that evidence of this fact would be authenticated at trial by records kept in the regular course of

18

business, and thus admissible.  (Def. Combined Stmt. Facts at ¶¶
12-13.)  <u>See</u> Fed.R.Evid. 803(6)(A),(B).

The Court thus finds that Defendant has met its burden of
producing a legitimate, nondiscriminatory reason for Plaintiff's
termination:  eliminating the Controller position as a cost-
saving measure in response to global economic conditions
generally and the loss of Defendant's biggest customer
specifically.  <u>See</u> <u>Young v. Hobart W. Grp.</u>, 897 A.2d 1063, 1069-
70 (N.J. App. Div. 2005). The burden thus shifts back to
Plaintiff to show that this reason is pretextual.

### 3.    **Evidence of Pretext**

Plaintiff, to show pretext, "must point to some evidence
. . . from which a factfinder could reasonably either (1)
disbelieve the employer's articulated legitimate reasons; or (2)
believe that an invidious discriminatory reason was more likely
than not a motivating or determinative cause of the employer's
action." <u>Fuentes v. Perskie</u>, 32 F.3d 759, 764 (3d Cir. 1994).
Plaintiff argues that his termination on the basis that his
position was being eliminated was a pretext for allowing Rossi, a
younger worker, to ascend to his position, and contends, in
effect, that Rossi should have been let go, rather than him.
(Pl. Opp'n at 55-56.)

The record indicates that Defendant did consider terminating
Rossi in the face of the company's financial struggles and

instructions from high-level executives to reduce head count.
(Craig Dep. at 86:14-20, 87:24-88:20, 92:19-93:23.)  But
ultimately, Craig "came to the conclusion" that Defendant did not
"require a Controller in the U.S.," such that Plaintiff would be
let go, and the duties of Controller would be split between Rossi
and Craig.  (Craig Dep. at 106:1-107:23.)

     Plaintiff has pointed to no evidence that would allow a
reasonable factfinder to determine that Defendant's proffered
reason of unfavorable global economic conditions and the
impending loss of the business of a major client should be
disbelieved; rather, Plaintiff concedes as much.  (Def. Combined
Stmt. Facts at ¶¶ 11, 14-15; Pl. Dep. at 117:25-118:4.)  The
circumstantial evidence Plaintiff relies on to suggest that this
reason was pretextual, and the real reason for his termination
was age discrimination, is limited to Giraud's statements about
wanting the company to get "younger and cheaper."  This evidence
will not carry Plaintiff's burden of showing that discrimination
was more likely than not the reason for Defendant's termination
decision, insofar as (1) Giraud did not make the ultimate
decision to terminate Plaintiff, Craig did; and (2) this
statement was made ten months before the termination.  See Ezold
v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 545 (3d Cir.
1992) ("Stray remarks by non-decisionmakers or by decisionmakers
unrelated to the decision process are rarely given great weight,

particularly if they were made temporally remote from the date of decision."). Moreover, this statement, by pairing the term "younger" with "cheaper," is consistent with the proffered reason for terminating Plaintiff, as opposed to the lower-paid Rossi, as a cost-saving measure. See Geltzer, 804 F.Supp.2d at 249-50; Young, 897 A.2d at 1070-71 (finding that statement offered by plaintiff as evidence of pretext for age discrimination, that plaintiff "was not in it for the 'long haul'" due to being near retirement age, was consistent with employer's proffered legitimate nondiscriminatory reason for the termination and so would not support plaintiff's burden of showing pretext). (See dkt. entry no. 37, Noble Cert., Ex. K, Salary Change Notification Form (showing Plaintiff's salary as being $81,000 as of 4-1-04); id., Ex. Q, Salary Change Notification Form (showing that effective 10-1-08, eight days before Plaintiff's termination, Rossi's salary was $67,000).)

The record shows that Plaintiff's duties were absorbed in part by Rossi and in part by Craig. (See, e.g., Craig Dep. at 13:11-15:24, 16:22-24, 30:11-31:19; Bayne Supp'l Cert., Ex. A, Rossi Dep. at 103:15-17.) However, the mere fact of Rossi's continued employment does not suffice to show intentional age discrimination by Defendant. EEOC v. MCI Int'l, Inc., 829 F.Supp. 1438, 1458 (D.N.J. 1993) ("A mere recitation by plaintiff

of the fact that younger employees were retained does not begin
to show pretext. . . .").

Because the Court finds that Plaintiff cannot show that it
was more likely than not that the reasons given for his
termination were a pretext for age discrimination, his NJLAD
claim fails at the third stage of the <u>McDonnell Douglas</u> test, and
summary judgment will be entered in favor of Defendant.

### CONCLUSION

For the reasons stated <u>supra</u>, the Court will grant the
motion for summary judgment.  The Court will issue an appropriate
Order and Judgment.


                                   s/ Mary L. Cooper
                                **MARY L. COOPER**
                                United States District Judge


Dated:    March 15, 2012